Good morning, your honors. My name is Benjamin Lechman and I represent the appellant Rene Arias-Robles. I'd like to reserve approximately two minutes or so of my time for rebuttal. The district court in this case erred in sentencing Mr. Arias-Robles on the basis of a prior conviction that was constitutionally deficient and that he was not advised properly of the immigration consequences of that plea prior to his entering the plea. Padilla v. Kentucky, let me back up for a moment, I think many times lawyers are criticized for giving the answer, it depends, and I think that the Padilla v. Kentucky decision understands that reality and therefore the language in the case provides sort of a spectrum in terms of what the attorney's advice can or should be in its circumstance dependent in regard to what the, how clear the immigration consequences are from the facts that appear to the parties at the time the plea is being entered. In, and there's a direct correlation with the situation where the, where the facts are very clear, then the advice needs to be correspondingly clear. And in this case, I think it's important to take a look at what Mr. Arias-Robles' attorney said. The evidence before the district court, both in the District of Texas and in the Southern District of California, was Mr. Arias' statement that he was not advised about the immigration consequences, that there were certainty, and there were certainty. His attorney then filed an affidavit that said, I specifically advised Mr. Arias-Robles that due to his citizenship status, the case was found guilty. And Padilla versus Kentucky said that that likelihood was insufficient in a case where deportation, and in this case, permanent deportation, banishment essentially, was a certainty. The, the attorney further went on to make some statements that I think are ambiguous in the sense that they leave out some key verbs. Said he was advised by me that he made his criminal matters that much more difficult to resolve and which would result in his subsequent deportation. From my discussions with Mr. Arias-Robles, is that he became a fugitive because he was keenly aware that he would be deported? Should he be found or plead guilty? From my discussions, is that he became, does it make any sense? Is it, is his opinion from those discussions? Is it that there was a conversation that took place where Mr. Arias-Robles said, I understand that that's the situation, it's just not clear from these documents? Can you help me understand? I think something was done to try to set aside that conviction. Yes. And what happened? It was denied. Mr. Arias-Robles filed a 2255. I helped him prepare that. He filed it. There's a lot of overcrowding in the Southern District of California. He was subsequently moved around. The answer was never served on me, although they did know that I had been assisting him. And it wasn't served on Mr. Arias as he had been moved to another facility. So I, they told me it was mailed to another facility. We never received a copy. He did not receive a copy. I found out that an answer had been filed that had been denied, I think, about a month, a little less than a month before he was actually sentenced. But I don't think this court owes deference to that opinion for a variety of reasons. I think one is that, I think it's wrongly decided, number one, it wasn't able to respond to it. Two is that I think it's being, it was just, whether or not that prior conviction should be used in calculating a sentence is a different question decided by a different standard of proof. Similar to the way the Supreme Court in Watts said that a defendant could be acquitted of some conduct at trial. You know, in a jury verdict, it's sort of almost sacrosanct, you know, in our culture, that you could have a jury verdict where the defendant is acquitted, yet that same defendant could be sentenced based on that acquittal conduct because it's a different standard of proof. Well, here, the habeas standard of proof is going to be different than the clear and convincing standard of proof that the government would have to abide by at the sentencing proceeding later. So I think there's a different standard of proof. I think the law in the circuit is that if a defendant challenges some aspect of the prior conviction, he's going    to have to abide by that prior conviction. And it's the government's burden to prove by, to overcome that objection by clear and convincing. That objection can take a lot of different forms. For instance, many times in these kind of cases, we have litigation revolving around the categorical or modified categorical approach, where we're talking about different things. So the objection can take a variety of different forms. Whatever form it takes, I think the government has to come at a higher standard of proof. And I think as a practical matter, I'm sorry. Even if we go so far as to say that what the lawyer's affidavit said is not enough, we've still got to get past the question of retroactive application of Padilla. Is that right? That's true. This circuit, as far as I know, as far as yesterday, I know the Court had this call to be about a 28J letter, but I did check recently, and I don't believe this Court has resolved that question yet. There's a circuit split. I think Supreme Court has a case pending now that might answer that question. Okay. As of today, it has not been resolved. I know the Third Circuit has come out with it being retroactive. I think that the question for all retroactivity questions is, is this something that sort of makes sense just sort of as a basic common-sense rule? Was this already sort of the rule and just not really spoken or didn't need to be spoken? And I would point to, I think in 1993, a Superior Court judge in Georgia made national news because there was a fairly egregious crime, but he sentenced the defendant to banishment from the State of Georgia. He was overturned later by the Georgia Supreme Court, but it made national news because it was kind of a ridiculous punishment. Because when we broke with the Continental Law, when we started this nation, the royal we ought to seem important here, but we decided that banishment was just something we weren't going to do, that that's a bedrock principle. We don't do that. And when you have these permanent deportations for these sort of quasi-citizens, people have been here for their whole life, their whole families here. They're for all generations, whether it be California, Hawaii, Kenya, whatever. It's a I'm sorry. What we have here is just a challenge to the length of the sentence, is that right? Not to the conviction? A challenge to the conviction within the District of Texas, within this appeal here, its use of the sentence. Right. So what's in front of us is a challenge to the length of the sentence. Yes. When's he scheduled to get out? It's, I believe, the end of next month. So pretty quick. It's quick, but it would also And how long is the supervised release? I believe it's a five-year term, and it would probably be different where he'd be sentenced today. And my guess is the supervised release is going to be, you go back to Mexico, and if you come back in illegally again, you're under supervised release. That is to say, I doubt he is going to be kept in this country for the five years of his supervised release. I agree. There's some other contingencies. I'm trying to figure out what's practically at stake here. Understood. I think what's practically at stake is if, let's just say hypothetically that this sentence was vacated, I think it would assist him in terms of the supervised release violation he's facing in the Southern District, or in the District of Western District of Texas. I think that that time could have been credited against that. I do think that if he were resentenced in the Southern District of California on this case, he probably would not be sentenced to a new term of supervised release. So there are some practical differences in terms of how long he'll be kept here based on the Texas case, and if there were any other conditions of supervised release in this case. But I'm assuming as soon as this sentence is finished and he's out of actual incarceration, he will be removed. Once he's done with this case and that there's a pending detainer in Texas, yes, I think when it's all said and done, he will be removed. Yes, I agree. Now, you just said, I think, is this a certainty or is this a high likelihood? I'm back to your Padilla question. Oh, in Texas? Well, no, I'm asking you when he's finished with his incarcerations in the United States, whether only this one is certain. Is it certain? Yeah. You said, I think, but you meant it's certain. I do. I've been wrong so many times before, but. A certainty that he'll be transferred to Texas for a supervised release violation for his Texas conviction? Yes, this conviction in the Southern District of California will form a basis for a violation of his supervised release within the Texas case. But even if somehow he were sentenced to a lower sentence in this case, it doesn't affect his conviction, which would still serve as a basis for the violation of supervised release in Texas. Yes. Correct? It wouldn't abrogate it, but it might affect the length of time that he actually is forced to serve before being removed in terms of his sentence in that Texas supervised release case. Some of the time that he's here on this case, if it were vacated, might in fact be credited to that sentence, that prospective sentence. Prospective, as we see here today. Since the Court does not have any further questions, I prefer to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Melissa Meister, and I represent the United States. This Court should affirm the District Court's sentence below, both because it properly enhanced the defendant's base offense level by 16 levels on the basis of his predicate, drug trafficking conviction, and because the 51-month sentence imposed in this case is substantively reasonable. Now, on de novo review, this Court should find the District Court properly enhanced the defendant's base level. The defendant's collateral attack on his predicate, federal drug trafficking conviction. Why don't you just hold off for a while. There it is. I apologize, Your Honor. No, you start. We'll give you your time back. Okay. The defendant's collateral attack on his predicate to federal drug trafficking conviction is foreclosed by black letter case law. Specifically, the Supreme Court's decision in Custis versus the United States is clear that the only instance in which a defendant may collaterally attack a prior conviction during a federal sentencing hearing is when he has been totally deprived of the right to counsel per Gideon versus Wainwright. This court, Nasegweta Madrigal, which was released November 19th, 2012, and I apologize for not filing Rule 28J letter, Judge Fletcher. I got this case a week ago, and I know the appellate rules say it should be greater than seven days in advance of the case. But in note four of that case, this court specifically said you can't collaterally attack under Padilla. This defendant was not totally deprived. He had counsel, and therefore his collateral attack is he can't do it. And this court doesn't need to consider the retroactivity of Padilla. This court doesn't need to wade into whether his prior counsel was telling the truth or not. He simply can't collaterally attack. This court should also affirm on the basis that the district court did not abuse its discretion in sentencing the defendant to 51 months imprisonment or the low end of his correctly calculated guideline sentence. And to correct the record, Your Honor, it was 51 months, two years of supervised release, and that's at ER three and four. In order to reverse the sentence under the abuse of discretion standard, this court must have both a definite and a firm conviction that the district court made a clear error of judgment. There was no such clear error here. The district court looked at the defendant, looked at the totality of his circumstances, both his mitigating, his aggravating circumstances, understood its discretion that it could depart from the guidelines, and simply chose, quite reasonably, not to do so. Mr. Leckman points to Mr. Arias' cultural ties to the United States, or more theatrically, his banishment from the United States. But he misses two key things in this argument. First, Mr. Arias is suffering, unfortunately, the same situation that all deported individuals suffer when they have family members that are lawfully living in the United States. It is an unfortunate consequence of having committed a deportable crime. Second, and more importantly, this court has consistently held it's not an abuse of discretion to deny cultural assimilation, either under the departure or 3553, where the defendant has a lengthy or serious criminal history. And this defendant's criminal history is both, your honors. He has convictions for narcotics trafficking, illegal possession of a firearm, and if you look at the PSR, that's in relation to narcotics trafficking, utilizing false identification, and alien smuggling, from a period of 1986 to 2006. In addition to absconding for approximately four years during his prior federal drug trafficking conviction. Is that the worst criminal history this court has ever seen? No, but is it enough criminal history that the district court's sentence was substantively reasonable? Absolutely. Additionally, the district court found it aggravating that this defendant, in addition to illegally re-entering the country, utilized a false document in doing so. One of the things the district court has to look at when it's considering the 3553 factors is the danger that the defendant poses to the public. And in this case, he had a prior use of a false document. He's convicted for drug trafficking. He then comes across, and not only does he possess a fraudulent B1, B2 visa, he also presented a false employee identification document. And just to correct the record, Your Honor, Mr. Lechman said in his brief that this defendant immediately said, you caught me, and that's just not true. In fact, after he was asked, put under Miranda and asked, what's your true name? He stayed with his story. He said, I'm the person on this false document. It wasn't until he called his son later, he was given a free call, that he said, they caught me. Lastly, and very briefly, Your Honors, I'd like to address the defendants in anything as the reverse case from the defendant, Inescoa. Inescoa became a legal permanent resident at the age of two. He started off his young life with a very serious crime, and then he was not deported, and he lived pretty lawfully in the United States for 20 years. He had three misdemeanor convictions. He disobeyed a court order. He had a conviction that revolved around alcohol, and a conviction that revolved around the personal use of drugs. But 20 years of fairly lawful residence in the United States. In contrast, Mr. Arias became a legal permanent resident at the age of ten, quite a bit later than Inescoa. Committed his first crime 14 years later, alien smuggling, and then he worked his way through the legal use of a firearm, utilizing a false identification, and tractor trailering into the United States 220 kilograms of marijuana. This defendant hasn't demonstrated his ability to live lawfully in the United States. In fact, during the time that he absconded, while he was pending his predicate drug trafficking conviction, he got arrested for a failure to appear, and he was also arrested for aggravated assault and robbery. So in the last ten years of his residence in the United States, he hasn't demonstrated any lawfulness. Most importantly, his predicate conviction counts towards his criminal history. And this court has repeatedly said that when the predicate conviction counts for criminal history, the reasoning of Inescoa simply doesn't apply. In some of your honors, the defendant's collateral attack on his drug trafficking sentence is foreclosed by black letter law, and the sentence was substantively reasonable, and this court should affirm on both. Thank you very much for your time this morning. Thank you. If I may, just a few quick points. I did misspeak. It was two years of supervised release. Regarding there being some sort of ban on Mr. Arias being allowed to challenge this prior conviction, that's not true, actually. As long as there's a 2255 pending, that just sort of opens the hood, and then the court can conduct a review into the prior conviction. There's at least three cases decided by this court, including Brock v. Weston, Gretzler v. Stewart, and United States v. McChristian. They're all post-Custis cases that say, once a 2255 petition is pending, and it's totally appropriate for the court to take a look at that prior conviction. Based on that, I'd submit it. Thank you. Thank you. This matter is also submitted.
judges: Pregerson, Fletcher, Nguyen